^December 17.
The PRESIDENT
delivered his opinion.
Passing by some minor points, which it is not material to notice, these cases will turn on the following facts: Hugh White-ford, as agent of his father, the owner of the slaves whose freedom is in question, who then, and ever afterwards managed the affairs of his father, came from Maryland to Virginia, purchased for his father a farm, to which, in the Spring of 1797, he removed with the slaves, and before he was followed by his father, which happened soon after, went before a Magistrate and within the sixty days took the oath prescribed by the Act concerning slaves, &c.; and the question is now raised, after the lapse of more than thirty years, whether he was competent to take that oath, he not being the absolute owner of the slaves: and the case of M’Michen v. Amos, 4 Rand. 134, is relied on as having decided it in favor of the slaves. In that case there was no distinction taken between the proprietor of the slave and the person bringing him into the State, The only question submitted by the Jury was, whether the husband, being the owner and importer, the wife was competent to take the oath, and the decision was, that the person bringing the slave into the State was alone competent to take the oath, which was entirely consistent with the Act, which does not advert to the owner, either in the clause imposing the penalties, in that giving freedom, or in that prescribing the oath. Nor can a contrary decision be implied from the opinion of the Judge in the first of the cases now before us. The son, (who was the agent of the father,) and the father, were the importers of the slaves. Both intended to become, and did become citizens of Virginia, by which the Daw was satisfied, its policy being to exclude slaves generally, but to admit them when brought by persons removing from another State and becoming citizens. Either the son or the father might take the oath. Being taken by the son, it was sufficient, within the letter and spirit of the Act. It is best to lay down no general rule in these cases. Where'xthe Act has been substantially obeyed, and its policy advanced, it cannot be decided to be violated, and heavy penalties inflicted, upon nice distinctions drawn in supposed cases.
In the first case, in which the instruction of the Judge to the Jury was proper, the Judgment is to be affirmed. In the case of Cordell v. Smith, the Judgment is to be reversed, and Judgment rendered for the Defendant; and in the case of White-ford v. Smith, the Judgment is to be reversed, and a new trial awarded, on which, the instruction which was asked for by the Defendant is to be given, if again required.
All the other Judges concurred.